## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN POWELL,** | : | **CIVIL NO. 1:12-CV-1684** |
| **Plaintiff,** | : | **(Judge Kane)** |
| **v.** | : | **(Magistrate Judge Schwab)** |
| | : | |
| **JON FISHER,** *et al.*, | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

Plaintiff, Kevin Powell ("Powell"), formerly an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this civil rights action *pro se* by filing a complaint on August 23, 2012. *Doc.* 1.[1] Thereafter, on April 30, 2013, Powell, through counsel, filed an amended complaint naming as defendants the DOC, Department Secretary John Wetzel ("Wetzel"), SCI-Smithfield Superintendent Jon Fisher ("Fisher"), and SCI-Smithfield Sgt. Workinger ("Workinger"). *Doc.* 47. Powell claims that, pursuant to 42 U.S.C. § 1983, defendants violated his right of access to the courts, Eighth and Fourteenth Amendment rights, and his statutory rights under the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("RA").

---

[1] On November 14, 2013, I held a telephonic conference in this matter, and Powell participated. Based on that conference, it is clear and undisputed that Powell has since been released from state custody.

Presently before the Court is the defendants' motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which has been fully briefed by the parties and is ripe for review.   For the reasons set forth, herein, I recommend that the motion to dismiss be granted in part and denied in part.

## II.   <u>Procedural History</u>.

On August 20, 2012, Powell filed his initial complaint *pro se*, while incarcerated in the SCI-Somerset Restricted Housing Unit (RHU).   *Doc.* 1. Powell's initial complaint alleged several §1983 claims in addition to an ADA claim against fourteen defendants.   *Id.* at ¶¶ 1-10.   On October 1, 2012, the District Court adopted Chief Magistrate Judge Carlson's Report and Recommendation recommending that Powell's motion to proceed *in forma pauperis* be granted, dismissing Powell's claims against all of the defendants except Workinger, and granting Powell leave to amend his initial complaint.   *Docs.* 10 & 15.   The Third Circuit dismissed Powell's appeal because it did not address an appealable final judgment.   *Doc.* 41.

Thereafter, on February 21, 2013, Powell obtained counsel to represent him in this action.   *Doc.* 36.   On March 27, 2013, Powell filed a motion for leave to file an amended complaint, which was granted.   *Docs.* 39 & 46.   On April 30, 2013, Powell filed a five-count amended complaint, alleging the following claims: denial of right of access to the courts against Fisher and Workinger (Count I); Failure to

Train and Supervise against Fisher (Count II); violation of his Fourteenth Amendment due process rights against Workinger and Fisher (Count III); violation of his statutory rights under the ADA against the DOC (Count IV); and a violation of his statutory rights under the RA against the DOC (Count V). *Doc.* 47 ¶¶ 122-132. Powell seeks declaratory and injunctive relief, compensatory and punitive damages, and reasonable attorneys' fees and costs.

On July 8, 2013, the defendants filed the instant motion to dismiss. *Doc.* 53. On July 22, 2013, the defendants filed their brief in support with exhibits, and a certificate of non-concurrence. *Docs.* 54, 55, 56, 57, 58, 59. On August 5, 2013, Powell filed a brief in opposition with exhibits. *Docs.* 65, 66, 67, 68. On August 22, the defendants filed a reply brief. *Doc.* 69.

In his brief in opposition, Powell asks the court to grant judgment in his favor because the defendants failed to file a timely rule-compliant response to Powell's amended complaint. In support of his argument, Powell asserts that the defendants failed to attach a certificate of non-concurrence with their motion to dismiss prior to the expiration of the deadline to answer Powell's amended complaint on July 8, 2013, in accordance with L.R. 7.1. Local Rule 7.1 provides, in pertinent part, that:

> A motion…shall contain a certification by counsel for the Movant that he or she has sought concurrence in the motion from each party, and that it has been either given or denied.

Although Powell correctly points out the requirements of Rule 7.1, and while the defendants' failure to file a timely certificate of concurrence is not to be countenanced, this error does not warrant the award of judgment in Powell's favor. The purpose of the certificate of concurrence requirement is to appraise the court of motions that are unopposed so that quick action may be taken. The failure to include a certificate of non-concurrence does not obviate the filing of an opposition brief. Further, the defendants' delayed certificate of non-concurrence, filed with their brief in support on July 22, 2013, rather than with their motion to dismiss on July 8, 2013, did not cause Powell to take any action that would not otherwise have been necessary. Thus, I recommend that the Court refuse Powell's request to enter judgment in his favor, and evaluate the defendants' motion on its merits.

### III.   Powell's Amended Complaint.

In his amended complaint, Powell alleges that he is an indigent and disabled individual who suffers from delusional disorder, has the reading comprehension of a second or third grade student, and an I.Q. of 70. *Doc.* 47 ¶¶ 86-90. Powell contends that he lacks sufficient proficiency in the area of reading comprehension to understand legal papers, correspondence, or DOC regulations without assistance. *Id.* at ¶ 42. He asserts that other prisoners assist him by reading legal papers and correspondence to him. *Id.* at ¶ 41.

Powell alleges that on or about September 22, 2010, he was placed in SCI Smithfield's Restricted Housing Unit (RHU).  *Doc.* 47 at ¶65.  Powell contends that his RHU confinement resulted from Fisher's failure to provide him with assistance and accommodation in preparing for disciplinary hearings, and that such confinement prevented him from accessing programs and services available to inmates in the general prison population.  *Id.* at ¶¶ 103, 104, 113.  According to Powell, Fisher's failure to provide him interpretive assistance violated DOC policy DC-ADM 006, which requires that all disabled inmates be provided with reasonable accommodation.  *Id.* at ¶ 98, 101.  Powell contends that this policy requires Fisher to insure that "'[i]nformation will be communicated to the inmate in a manner which will maximize the inmate's ability to comprehend and understand the information' at any hearing that results in placement of a disabled prisoner in disciplinary confinement in an RHU."  *Id.* at ¶ 101.  Further, according to Powell, Fisher failed to train and supervise the corrections officers under his command regarding DOC policy as to accommodations for prisoners with disabilities which led to the denial of legal assistance and his legal papers, his confinement in the RHU, and the loss of prison programming and services, "including but not limited to employment, classes, recreational facilities, chapel

services, media, the general library, the commissary, and the common dining hall." *Id.* at ¶¶ 112-114.[2]

Powell asserts that while at SCI Smithfield he kept legal documents, correspondence, and notes related to his legal actions in his cell. *Id.* at ¶ 52. After two cell searches between late August 2010 and early September 2010, Powell decided to ship some of his papers to a family member for copying and safekeeping. *Id.* at ¶ 54. On September 9, 2010, Powell contends he took four boxes of files to the prison's shipping facility. *Id.* at ¶ 55. One week later, on September 15, 2010, Powell alleges that he was called to the receiving room where Workinger explained that Powell had insufficient funds in his prison account to ship the boxes to his family. *Id.* at ¶¶ 56-57. Powell contends that he requested that the four boxes be returned, apparently intending to store them in his cell. *Id.* at ¶58. Instead, Powell alleges that Workinger told him that the boxes would be placed in storage. *Id.* at ¶¶ 59-60. Powell asserts that he did not regain access to the four boxes placed in storage on September 15 for "many months." *Id.* at ¶ 61.[3]

---

[2]    Powell alleges that the DOC receives federal funding to support is programming and services. *Id.* at ¶ 115.

[3]    Although not clear from the amended complaint, it is reasonable to infer that Powell's four boxes were eventually returned to him; however, the papers taken from his cell in December 2010, in preparation for his prison transfer, were not. *See Doc.* 47 at ¶¶ 61, 80.

On October 29, 2010, Powell filed Grievance No. 341635. This grievance was attached to his complaint, (*Doc.* 1, Ex. 2), and his amended complaint incorporates it by reference. *Doc.* 47 ¶ 121. In Grievance No. 341635, Powell sought the return of the four property boxes. *Doc.* 1, Ex. 2 p. 3. The Initial Review Response to Grievance 341635 noted that Powell exceeded his maximum amount of property, which was explained to him via memos dated September 23, 2010, and October 29, 2010. *Id.* at 2. The initial response indicated that Powell did not have the funds to send the boxes home, and that DOC staff offered him the alternative remedy of having a family member pick-up the property. *Id.* It is unclear whether Powell appealed Grievance No. 341625 to final review. *Id.*

Powell alleges that the four boxes contained legal documents that he needed to effectively litigate his claims in *Powell v. Symons*. *Doc.* 47 at ¶ 62. Further, Powell alleges that these boxes contained documentation supporting this claim that he was being held past his lawful release date, thus preventing him from filing a timely petition for a writ of mandamus and a properly filed petition for habeas corpus. *Id.* at ¶ 63.

On December 6, 2010, Powell was informed that he was scheduled to be transferred to SCI-Fayette on December 7. *Id.* at ¶ 71. Workinger packed all of Powell's papers. *Id.* at ¶ 68. According to Powell, he requested permission to pack the papers himself; however, his request was denied. *Id.* at ¶ 69. Workinger

packed Powell's papers in boxes outside of his presence and allegedly did not issue

Powell a receipt for his property.  *Id.* at ¶¶ 69-70.  These papers were never

returned to Powell.  *Id.* at ¶ 79.

Powell alleges that Workinger violated DOC policy DC-ADM 815 §1(C),

which governs the handling of prisoners' property during a transfer between

institutions.  *Id.* at ¶ 72.  This policy provides that all inmate property must be

inventoried prior to transfer, and, where the inmate is prevented from being present

while the property is packed, the property must be inventoried by two officers.  *Id.*

at ¶¶ 73-74.

When Workinger failed to arrange for Powell's legal papers to be sent to

SCI-Fayette, Powell allegedly made numerous requests to Fisher asking for his

files to be returned and informed him of the irregular packing procedure employed

during his transfer.  *Id.* at ¶¶ 78, 110.  On December 13, 2010, Powell filed

Grievance No. 347116.  This grievance was attached to his initial complaint, (*Doc.*

1, Ex. 2), and his amended complaint incorporates it by reference.  *Doc.* 47 ¶121.

In Grievance No. 347116, Powell alleged that Workinger and Lt. Shoop refused to

pack all of his legal documents prior to his transfer from SCI-Smithfield.  *Doc.* 1,

Ex. 2 p. 13.  The Initial Review Response noted that Powell had four boxes of

excess property, and asserted that pursuant to DOC policy excess property must be

shipped out at the inmate's expense and that Powell did not have sufficient funds

to ship the boxes. *Id.* at p. 12. Grievance No. 347116 was appealed to final review. *Doc.* 1, Ex. 2 p. 8.

Powell alleges that the DOC policy governing the transfer of prisoners and their property between institutions provides for an exception to the limits on the number of boxes for indigent prisoners, and that accommodation should have been made in his case. *Doc.* 47 ¶¶ 94-96. Powell contends that he lost access to documents that he needed in order to effectively litigate his claims in *Powell v. Symons* as a result of Workinger and Fisher's conduct. *Id.* at ¶ 81. Further, Powell alleges that he lost access to records that would have allowed him to move for an order authorizing the district court to consider a second habeas application, and make an effective challenge to the lawfulness of his continued incarceration. *Id.* at ¶¶ 83-85.

## IV.   Legal Standard, Motions to Dismiss.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than

10

labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

11

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.   Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.   In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

### V.   <u>Discussion</u>.

#### A. <u>Eleventh Amendment Sovereign Immunity</u>.

Before proceeding to Powell's particularized claims, I must first address an issue relating to the Court's subject matter jurisdiction.   Under the Eleventh Amendment to the United States Constitution, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Accordingly,

the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages, also known as the doctrine of sovereign immunity. *See Pennhurt State Sch.& Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *A.W. v. Jersey City Pub. Schs*, 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by Eleventh Amendment sovereign immunity. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, (1989). Where sovereign immunity applies, a federal court is stripped of subject matter jurisdiction. *See Johnson v. U.S. Attorneys*, CIV. A. 10-1643, 2010 WL 2991409, at *2-3 (E.D.Pa. July 27, 2010). Thus, unless a state consents, Eleventh Amendment sovereign immunity bars suits against a state in federal court. *Pennhurst*, 465 U.S. at 100-01. This is true regardless of whether suit is brought under federal law, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996), or state law. *Pennhurst supra*, 465 U.S. at 117.

Claims for prospective injunctive relief to end an ongoing violation of federal law against state officials in their official capacities, however, are not precluded by the Eleventh Amendment. *See Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011). Additionally, state officials sued in their individual capacities are "persons" within the meaning of § 1983. *See Hafer*, 502 U.S. at 31. As such, the

13

Eleventh Amendment does not bar suits for monetary damages brought under § 1983 against state officials in their individual capacities. *Id.*

Given that the Commonwealth of Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity, *see* 42 PA. CONS. STAT. ANN. § 8521–22, Powell's claims for monetary damages against Wetzel, sued only in his official capacity (as listed in the caption of the Amended Complaint), and Fisher, in his official capacity, are barred by the doctrine of sovereign immunity provisions of the Eleventh Amendment and should be dismissed.

### B. <u>Civil Rights Claims against Fisher</u>.

Defendants argue that Powell's claims against Fisher should be dismissed because Powell has failed to demonstrate the personal involvement necessary to establish a claim under § 1983. For the reasons that follow, it is recommended that defendants' motion to dismiss the § 1983 claims against Fisher, specifically the access to courts, due process, and failure to train and supervise claims, be granted.

In order to state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003). To establish

14

individual liability under § 1983, a plaintiff must sufficiently allege personal involvement of the defendant since it is uncontroverted that the doctrine of *respondeat superior* does not apply to constitutional claims. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Each defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal,* 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207-08. Where the allegations involve a supervisory defendant, the Third Circuit has instructed that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.,* 629 F.3d 121, 129, n.5 (3d Cir. 2010) (citations omitted); *see also Argueta*, 643 F.3d at

72; *Rode*, 845 F.2d at 1207 (citations omitted).   Allegations of "participation and acquiescence . . . must be made with appropriate particularity." *Rode,* 845 F.2d at 1207.   Additionally, and most importantly in this case, in order to succeed on the knowledge and acquiescence theory, there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." *Colburn v. Upper Darby Twp.,*   838 F.2d 663, 673 (3d Cir. 1988); *see also Rode,* 845 F.2d at 1208 (allegations of personal involvement after-the-fact are insufficient to give rise to personal involvement).

Alternatively, a supervisory defendant who is also a policymaker, can be held liable under § 1983 for constitutional violations if acting "with deliberate indifference to the consequences, [he or she] established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenille Det. Ctr.,* 372 F.3d 572, 586 (3d Cir. 2004). To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).   Without the requisite *scienter*, a prison official's conduct alone will not constitute deliberate indifference. *Id.*   Deliberate indifference does not require an express intent to cause harm, but it does require more than mere negligence. *Id.* at

16

835-86.  The absence of an underlying constitutional violation, however, precludes supervisory liability under § 1983.  *Crawford v. Lappin,* 446 F. App'x 413, 416 (3d Cir. 2011); *Argueta*, 643 F.3d at 72.

### C. <u>Access to the Courts Claim against Fisher.</u>

Powell's access to the courts claim against Fisher flows from the alleged unconstitutional retention of his legal materials and property.   Powell claims that Fisher, in his capacity as Superintendent at SCI-Smithfield, has specific responsibilities in carrying out DOC policies regarding inmates with disabilities and regarding the transfer of inmate property between institutions. *Doc.* 47, ¶¶ 93-94.  Powell further contends that he made numerous requests of Fisher for the return of his property and that he made those requests both verbally and in writing. *Id.* at ¶ 78.  Powell also claims that Fisher was aware of the irregular confiscation of his property as a result of Powell's verbal and written pleas.  *Id.* at ¶ 110.

Powell, however, fails to allege Fisher's contemporaneous personal involvement in the decisions or actions to deprive him his property.  Powell does not allege how Fisher participated or played an affirmative part in the decisions regarding his property.  As well, Fisher's alleged after-the-fact knowledge of such alleged wrongdoing, through oral communication or written letters or grievances, is not enough to establish the requisite personal involvement.   Further, the amended complaint is lacking in any allegations that support that Fisher acted with

deliberate indifference to a policy, practice or custom which directly caused Powell's alleged harm.   Accordingly, defendants' motion to dismiss Powell's access to courts claim against Fisher should be granted.

### D. Fourteenth Amendment Due Process against Fisher.

The amended complaint further alleges that "Fisher violated Powell's Fourteenth Amendment right to due process by failing to provide him with assistance to read and understand DOC policies, leading to loss of liberty interests and property." *Doc.* 47 ¶ 127.   In furtherance of this claim, Powell alleges that DOC policy requires information to be communicated to an inmate consistent with the inmate's ability to comprehend and understand.   *Doc.* 47 ¶ 101.   Fisher's alleged failure to follow the procedures outlined in the DOC policies, however, does not state a claim of procedural due process.   "Procedures set up by the DOC do not endow [Powell] with a liberty or property interest under the Fourteenth Amendment, requiring that DOC abide by its own procedures." *Evans v. Rozum*, Civil Action No. 07-230J, 2008 WL 5068963, at *12 (W.D. Pa. Nov. 24, 2008) (citing *Olim v. Wakinekona,* 461 U.S. 238 (1983)).   Moroever, "the failure of prison officials to follow DOC policy does not, in and of itself, result in violation of due process." *Tarselli v. Harkleroad*, Civ. A. No. 10-1266, 2012 WL 603219, *7 (W.D. Pa. Feb. 23, 2012).   Powell, therefore, has failed to state a viable claim

18

that his constitutional rights have been violated on the basis of Fisher's alleged deviation from DOC policy.

To the extent Powell is claiming that his due process claim against Fisher is grounded in his RHU confinement, Powell's claim fails because he has not alleged facts from which it can reasonably be inferred that he had a liberty interest protected under the Due Process Clause.   In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court, addressing the question of when the state can create liberty interests protected by the Due Process Clause, held that:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 483-84.

In *Sandin,* an inmate was sentenced to thirty days of disciplinary confinement in the Special Holding Unit.  As a result of the prisoner's disciplinary segregation he "had to spend his entire time alone in his cell (with the exception of 50 minutes each day on average for brief exercise and shower periods, during which he nonetheless remained isolated from other inmates and was constrained by leg irons and waist chains)."  *Id.* at 494 (Breyer, J. dissenting).  The Court concluded that the inmate's thirty days in the Special Holding Unit, considered

within the context of prison confinement, did not impose the type of atypical and significant deprivation of liberty in which the state could be seen to have created a liberty interest. *Id.* at 486 (majority opinion). The Court noted that disciplinary confinement at the prison in question, with only insignificant exceptions, mirrored conditions imposed on inmates in administrative and protective custody; that based on a comparison of inmates inside of and outside of disciplinary segregation, placement in segregation for thirty days did not work a major disruption in the inmate's environment; that disciplinary action did not inevitably affect the duration of the inmate's sentence; and that the "regime to which [the inmate] was subjected was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 486–87.

"After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin,* 545 U.S. 209, 223 (2005) (quoting *Sandin, supra,* 515 U.S. at 484). Thus, in deciding whether a protected liberty interest exists under *Sandin,* we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether a protected liberty interest exists

20

under *Sandin* requires inquiry into the specific facts of the case; however, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pa. Dep't of Corrs.*, 642 F.3d 163, 171 (3d Cir. 2011).

Powell has not alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had a liberty interest protected by the due process clause. Although Powell alleges that he was confined to the SCI-Smithfield RHU on several occasions, he only specifically addresses one period of RHU confinement from September 22, 2010, to December 7, 2010. An allegation of less than three months of administrative or disciplinary RHU confinement by itself does not amount to an atypical and significant hardship. *See Smith v. Mensinger,* 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months of disciplinary confinement is not an atypical and significant hardship); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (holding that a Pennsylvania prisoner's confinement in administrative custody for 15 months did not implicate a liberty interest).

Hence, Powell's amended complaint fails to state a viable due process claim against Fisher upon which relief may be granted, warranting the granting of Fisher's motion to dismiss this claim.

### E. Eighth Amendment Failure to Train and Supervise Claim.

Powell alleges that, in violation of the Eighth Amendment, Fisher failed to provide him with reasonable accommodations for his disability.  As a result, Powell contends that he was unjustly confined to the RHU, unable to understand the disciplinary charges against him and DOC policy, denied access to the law library, and denied access to his property.  *Doc.* 47 at ¶¶ 102-109, 125.   Powell further asserts that Fisher failed to train and supervise his officers regarding DOC policies, including DOC policies pertaining to disabled prisoners, thereby violating Powell's Eighth Amendment rights.  *Id.* at ¶¶ 107-109.

Regarding supervisor liability on an Eighth Amendment claim for failure to properly supervise, the Third Circuit has developed a four-part test based on the Supreme Court's reasoning in *City of Canton v. Harris*, 489 U.S. 378 (1989). Under this regime, to hold a supervisor liable because his policies or practices led to an Eighth Amendment violation, the plaintiff must identify a specific policy or practice that the supervisor failed to employ and allege that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the risk was created; (3) the supervisor was indifferent to

that risk; and (4) the Eighth Amendment injury resulted from the policy of practice. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

Here, however, Powell has failed to allege a threshold constitutional injury to qualify his supervisor liability claim against Fisher. *See Crawford*, 446 F.App'x at 416 (stating that "the absence of an underlying constitutional violation precludes any supervisory liability on a "knowledge or acquiescence" or "failure to train" theory"); *Tri Thanh Nguyen v. Franklin Cnty.*, No. Civ. A. 3:10-CV-1866, 2012 WL 1378679, at *7 n.6 (M.D. Pa. Apr. 20, 2012)("Since there was no unconstitutional conduct, supervisory liability also fails on a policy or practice approach."), *aff'd.*, No. 12-2559, 2013 WL 323249 (3d Cir. Jan. 29, 2013).

The Eighth Amendment provides as follows:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. CONST. amend. VIII.

The Eighth Amendment, enforced against the states through the Fourteenth Amendment, guarantees inmates humane conditions of confinement.  In order to succeed on an Eighth Amendment claim, a prisoner must show that the alleged deprivation is 'sufficiently serious' and that he or she has been deprived of the minimal civilized measure of life's necessities.  *Farmer*, 511 U.S. at 834 (quoting *Rodes v. Chapman*, 452 U.S. 337, 347 (1981)).  An inmate must also allege, and ultimately demonstrate, that prison officials acted with deliberate indifference to

his or her health and safety needs.  *Id.* (stating that prison officials operated with deliberate indifference when they consciously know of and disregard excessive risks to a prisoner's wellbeing); *see also Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997).  "[O]nly the unnecessary and wonton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297); *see also Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) ("[E]xtreme deprivations are required to make out a conditions of-confinement claim . . ." under the Eighth Amendment.)

Powell's allegations of harm fall well short of the sufficiently serious conditions that deprived him of the "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.  Deprivations of legal material and personal property and accommodations to understand prison policies do not per se amount to a constitutional violation, much less an Eighth Amendment violation. Moreover, "[a]dministrative segregation only implicates a protected liberty interest if it dramatically departs, in length on time or otherwise, from basic prison conditions." *Mitchell*, 318 F.3d at 532.  "Mere placement in segregated confinement, without more, does not violate the Eighth Amendment. " "[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment." *Clifton v. Robinson,* 500 F.Supp. 30, 34 (E.D.Pa.1980) (quoting *Burns v. Swenson,* 430 F.2d 771, 777 (8th Cir.1970)); *Whitehead v. Rozum*, No. Civ. A. 09-220J,

2010 WL 3885651, at *2 (W.D. Pa. Aug. 31, 2010) <u>report and recommendation</u>
<u>adopted,</u> No. Civ. A. 09-220J, 2010 WL 3843749 (W.D. Pa. Sept. 28, 2010).
Accordingly, since Powell fails to allege any Eighth Amendment violation,
Powell's claim of supervisory liability premised upon a violation of his Eighth
Amendment rights also fails and should be dismissed.

### F. <u>Access to the Courts Claim against Workinger.</u>

Powell also alleges that his ability to litigate several of his cases was
compromised by the retention and detention of his legal materials during his
incarceration at SCI Smithfield.  Workinger argues that Powell's access-to-courts
claim fails because Powell does not allege an injury to a non-frivolous underlying
claim.  Viewing the facts in Powell's favor, as I must, I find that Powell has met
his burden at this stage of the pleadings and recommend that Workinger's motion
to dismiss on this claim be denied.

Prisoners have a constitutional right of access to the courts, which is
required to be "adequate, effective, and meaningful."  *Bounds v. Smith,* 430 U.S.
817, 822 (1977); *Lewis v. Casey,* 518 U.S. 343, 346 (1996).  "Whether an access
claim turns on a litigating opportunity yet to be gained or an opportunity already
lost, the very point of recognizing any access claim is to provide some effective
vindication for a separate and distinct right to seek judicial relief for some wrong."
*Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002).  To survive a motion to

dismiss on a denial of access claim, the plaintiff must specifically identify the underlying cause of action, anticipated or lost; its meritorious, or non-frivolous, nature; the official acts injuring the litigation; and that such claim is more than a hope. *See Christopher*, 536 U.S. at 415-16. Plaintiff must further show that he suffered an actual injury as a result of the alleged frustrating official acts. *Lewis*, 518 U.S. at 354. The availability of the right of access to courts is not meant to "transform [inmates] into litigating engines;" rather, the inmate must show that the defendant has hindered or frustrated his ability to pursue a non-frivolous direct appeal from a conviction, habeas petition, or civil rights action. *Id.* at 354-55. "Examples of actual injury may include 'missing filing deadlines or being prevented from presenting claims.'" *Denney v. Nelson*, 304 Fed. App'x. 860, 863 (11th Cir. 2009) (quoting *Wilson v. Blankenship*, 163 F.3d 1284, 1290 n.10 (11th Cir. 1998)).

Courts in the Third and other circuits have held that the confiscation or destruction of a prisoner's legal papers by prison staff may violate a prisoner's right of access to the courts. *Heller v. Keenhold,* No. Civ. A. 1:04-CV-1893, 2006 WL 759647, at *4 (M.D. Pa. March 24, 2006) (addressing an access to courts claim at the summary judgment stage as opposed to the motion to dismiss phase of litigation); *Zilich v. Luch,* 981 F.2d 694 (3d Cir. 1992); *see also Reid v. Seville,* No. CIV. A. 96-2577, 1996 WL 421901, at *5(E.D. Pa. July 16, 1996); *Simmons v.*

*Dickhaut,* 804 F.2d 182 (1st Cir.1986); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986).  In *Zilich,* plaintiff claimed that the retention of his materials and documents by prison officials following his transfer from one institution to another interfered with his right to present a defense in pending criminal and civil matters. The plaintiff alleged that he had been deprived of evidence that, although eventually returned to him, might not have been available to his counsel in presenting a defense.  *Zilich,* 981 F.2d at 695.  Despite the plaintiff's failure to elaborate on the nature of the cases injured by the taking of his legal papers, the Third Circuit found that *Zilich* stated a claim for denial of access to the courts.  *Id.* at 696.  The Court cautioned, however, that plaintiff still had before him the formidable task of avoiding summary judgment by producing evidence in support of his claim.

Here, Powell has met his burden of pleading sufficient facts to survive a motion to dismiss on an access to courts claim.  Specifically, he details that such materials include legal documents that he needed to litigate claims in *Powell v. Symons* and documentation establishing that he was being held past his lawful release date.  Further, he contends that the confiscation of his documents injured his ability to establish his correct release date, file a timely petition for a writ of mandamus and properly file a successive petition for habeas corpus.  *Doc.* 47 ¶¶ 62, 63.  Whether Powell can come forward with actual evidence to create a

genuine issue of material fact necessitating trial on this claim is another matter.  At this point in the case, however, Powell has satisfied his burden, and I, therefore, recommend that defendants' motion to dismiss the access to courts claim be denied.

### G. Due Process Claim against Workinger.

In this instance, Powell claims that Workinger violated his Fourteenth Amendment due process rights by "irregularly" confiscating or destroying his legal and personal materials. The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. Encompassed within the Due Process Clause is the guarantee of fair procedure.  In raising a procedural due process claim under 42 U.S.C. § 1983, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)).  Accordingly, "[t]he constitutional violation is not complete unless and until the State fails to provide due process." *Id.* at 126.  Therefore, in addition to first determining the scope of protection of "life, liberty, or property" found in the Due Process Clause, "it is

[also] necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.*; *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

In *Parratt*, a state prisoner brought a § 1983 action because prison employees *negligently* had lost materials he had ordered by mail. The prisoner did not dispute that he had a postdeprivation remedy. Under state law, a tort-claim procedure was available by which he could have recovered the value of the materials. *Parratt,* 451 U.S., at 543-44. The Supreme Court ruled that the tort remedy was all the process the prisoner was due, because any predeprivation procedural safeguards that the State did provide, or could have provided, would not address the risk of this kind of deprivation. The very nature of a negligent loss of property made it impossible for the State to predict such deprivations and provide predeprivation process. Thereafter, in *Hudson*, the Court extended this reasoning to an *intentional* deprivation of property. *Hudson v. Palmer,* 468 U.S. 517, 534-35 (1984).

Following *Parratt* and *Hudson*, "'[a]n unauthorized … deprivation of property' by prison officials does not violate the Due Process Clause 'if a meaningful post-deprivation remedy … is available.'" *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008)(quoting *Hudson*, 468 U.S. at 533). In this Circuit, courts have repeatedly found that the DOC's grievance system is constitutionally adequate to provide inmates with meaningful post-deprivation remedies. *See, e.g.,*

*Tarselli v. Harkleroad,* Civ. A. No. 10–1266, 2012 WL 603219, at *6 (W.D. Pa. Feb.23, 2012); *McEachin v. Beard,* 319 F.Supp.2d 510, 514–515 (E.D. Pa.2004) ("[T]he DOC prison grievance system has been recognized by courts in this Circuit as providing adequate post-deprivation remedies to inmates in satisfaction of the Due Process Clause").  As well, the same courts have found that Pennsylvania law provides for such adequate remedies through replevin and conversion claims.  *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (finding that a Pennsylvania state law conversion claim was a post-deprivation remedy); *Lewis v. Heckler*, Civil Action No. 11–6492, 2012 WL 1646862, at *3 (E.D. Pa. May 10, 2012) ("In Pennsylvania, there are postdeprivation remedies pertaining to seizures of property that have been deemed meaningful for purpose of alleged violations of the Fourteenth Amendment."); *Marsh v. Ladd*, No. 03–5977, 2004 WL 2441088, at *7 (E.D.Pa. Oct.27, 2004) ("Plaintiff has an adequate state post-deprivation remedy in her state law claims for replevin and conversion.").

Here, Powell does not deny the availability of the grievance system to him. The amended complaint (incorporating by reference the complaint and its exhibits), acknowledges that Powell took advantage of the post-deprivation process available to him by filing grievances related to the alleged destruction, loss and/or retention of his personal property, namely legal materials and other papers.  Thus, the amended complaint affirmatively establishes that Powell was afforded a post-

deprivation remedy consistent with the settled legal standards applicable to deprivation of inmate property by prison officials.   Additionally, Powell's arguments that his grievances were "doomed from the start" because of the lack of assistance provided to him in filing such grievances, his failure to comply with certain procedural issues, and his rambling handwritten narratives do not serve to render the post-deprivation remedy in this case constitutionally infirm.   To the contrary, the present record in this case shows that Powell vigorously participated in the administrative process by filing grievances and appeals to which the prison officials were able to respond without commenting that the claims were incoherent or incapable of being understood.   The failure of the prison officials to provide what Powell deems to be favorable responses to his grievances does not demonstrate that the process was inadequate or constitutionally deficient.   *See Morales v. Beard,* Civ. A. No. 09–162, 2009 WL 2413425, at *2 (W.D.Pa. July 31, 2009); *McEachin,* 319 F.Supp.2d at 515; *Austin v. Lehman,* 893 F.Supp. 448, 454 n. 4 (E.D.Pa.1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").   Moreover, regardless of whether Powell is satisfied with the outcome of the grievance process, the alleged deprivation of his property does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment.   *See also Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410,

422 (3d Cir.2000) (holding that county prisoner had adequate post-deprivation remedy through a grievance system that permitted prisoners to complain about "any" matter that is "unjust" and provided for direct appeal to the warden).

Accordingly, the facts alleged in the amended compliant do not suffice to state a procedural due process violation against Workinger, and this claim should be dismissed.

### H. <u>ADA and RA Claims against DOC</u>.[4]

Under Title II of the ADA, discrimination is prohibited in connection with access to public services, requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the RA states, "no otherwise qualified individual with a

---

[4] Relying on the same facts forming the basis for his ADA claim, Powell also raises a claim under the RA in Count IV. Except for their causation elements, the ADA and RA are coextensive and interpreted identically. *See C.G. v. Commonwealth of Pa.*, 734 F.3d 229, 235 (3d Cir. 2013); *Yeskey v. Commw. of Pennsylvania Dept. of Corrections*, 118 F.3d 168, 170 (3d Cir. 1997). The only additional element that the RA requires is that a plaintiff also allege that the defendant entity receives federal funding to support the activities it has denied to the plaintiff. Powell makes such an allegation in his complaint. *Doc.* 47 at ¶ 115. Accordingly, for purposes of judicial economy, I will dispense with a separate analysis of Powell's RA claim.

disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794. It is also well established that state prisons are "public entities" as defined by Title II of the ADA. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *Brown v. Pennsylvania Dep't of Corrections*, 290 F. App'x 463, 467 (3d Cir. 2008). Likewise, it is clear that the plain language of § 12132 applies only to "public entities" and not individuals.[5]

A plaintiff need not prove all elements of a *prima facie* ADA case in order to survive a motion to dismiss. Rather, (s)he must allege only material facts that, "in addition to inferences drawn from those factual allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124 (3d Cir. 1998). To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from

---

[5] Under Title II of the ADA, plaintiffs may sue for prospective injunctive relief against state officials. *See Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 179 (3d Cir. 2002)("[F]ederal ADA claims for prospective injunctive relief against state officials are authorized by the *Ex Parte Young* doctrine."). It is unclear, however, whether Powell intends to sue Wetzel in his official capacity under the ADA and RA. *See also, Doc.* 47 at ¶¶ 117-18. Regardless, as Powell's request for prospective injunctive relief is now moot by operation of his release from state custody, the only other forms of damages that he seeks are for retrospective relief. *See Doc.* 47 at 23. Accordingly, Wetzel should be dismissed as a defendant.

participating in, or denied the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Maresca v. Blue Ridge Communications*, No. 09-2470, 2010 WL 407127, *2 (3d Cir. Feb. 5, 2010) (citing *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)). The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or, (C) being regarded as having such an impairment." See 42 U.S.C. § 12102(2).

In 2008, Congress amended the ADA by passing the ADA Amendments Act of 2008 ("ADAAA"). ADAAA, Pub. L. No. 110–325, 122 Stat. 3553 (2008). Congress did this in order to reinstate broad ADA coverage of individuals because of its conclusion that the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002) and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 499 (1999), had improvidently narrowed the scope of protection intended to be afforded in the ADA. ADAAA, 122 Stat. 3553. Congress, thus, instructed the courts that they were interpreting the statute too restrictively. *Id*; *see also Lowe v. Am. Eurocopter, LLC*, No. 1:10CV24–A–D, 2010 WL 5232523, at *7 (N.D. Miss. Dec. 16, 2010) ("The ADAAA appears to have legislatively pre-empted the Supreme Court's past definitions of 'substantially limits,' stating that the Court's

standard was 'too high,' and that 'substantially limits' should be more broadly interpreted."). For instance, "Congress explicitly rejected *Toyota* and *Sutton* in an effort to promote a less restrictive interpretation of 'disability' under the ADA." *Fleck v. WILMAC Corp.*, No. 10–05562, 2011 WL 1899198, at *5 (E.D. Pa. May 19, 2011). ADAAA, Pub. L. 110-325, 122 Stat. 3553 (2008).

However, under the ADA, it remains "'insufficient for individuals attempting to prove disability status ... to merely submit evidence of a medical diagnosis of an impairment.'" *Pritchett v. Ellers*, 324 F. App'x 157, 159 (3d Cir. 2009) (citing *Toyota*, 534 U.S. at 198). "Merely having an impairment does not make one disabled for the purpose of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota*, 534 U.S. at 195. "Major life activities" are "those activities that are of central importance to daily life." *Id.* at 197; *see* 42 U.S.C. § 12102(2)(A)(providing a nonexclusive list of qualifying "major life activities"). Moreover, to prove disability, a plaintiff "must further show that the limitation on the major life activity is 'substantia[l].'" *Toyota*, 534 U.S. at 197. As mentioned, in 2008, Congress clarified that this is not intended "to be a demanding standard." *See* 154 Cong. Rec. S8840-01 (2008); *see also* 42 U.S.C. §12102(4)(B)("The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008."). A disability must, instead, be assessed on a case-by-case basis, as it is an

individualized inquiry. *Toyota*, 534 U.S. at 198.

Last, disability discrimination "differs from discrimination in the constitutional sense" because the ADA has its own definition. *Melton v. DART*, 391 F.3d 669, 672 (5th Cir. 2004). Accordingly, under the ADA, discrimination may include a defendant's failure to make reasonable accommodations to the needs of a disabled person. *Id.*; *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (Congress recognized "that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion" or discrimination); *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted exclusion from participation or denial of the benefits of the prison's services, programs or activities.") (internal quotation marks, brackets, ellipses, and citation omitted). Whether a request for an accommodation was made is a matter for summary judgment. *E.g., Wright v. Texas Dept. of Crim. Justice*, No. 7:13-CV-0116-O, 2013 WL 6578994, at *5 (N.D. Texas Dec. 16, 2013).

Turning to the amended complaint, Powell alleges that the DOC failed to accommodate his mental disability resulting in the denial of certain services and

prison programming such as legal and general library services, employment, recreation, chapel, media, commissary and common dining hall. *See Doc.* 47 at ¶¶ 104 & 113. Given that the phrase "substantially limits" is to be interpreted broadly, I find that Powell has sufficiently alleged that he is a qualified individual with a disability for purposes of withstanding the DOC's motion to dismiss. Powell's proffered facts in support of this claim also create a plausible inference of the failure to accommodate his disabilities. Powell alleges that he suffers from the serious mental illness of delusional disorder and that he has "low intelligence," resulting in an IQ of 70. *Doc.* 47 at ¶¶ 32, 86-90. He further states that his mental disabilities impact his ability to think and communicate. *Id.* As a result of not being provided interpretive assistance, he contends he was denied access to certain prison activities, programming, and services. *Doc.* 47 at ¶¶ 86, 90, 97-99, 104-05, 113. Additionally, Powell alleges that he was not reasonably accommodated with interpretive assistance to help him understand the disciplinary charges leveled against him that resulted in his RHU confinement and denial of access to certain prison services and programming. *Id.* at ¶¶ 102-04. Taken together, and accepting such as true, these allegations suffice to plead a claim that Powell was discriminated against in contravention of Title II of the ADA (and in violation of the RA) by the DOC. Accordingly, the defendants' motion to dismiss the ADA and RA claims should be denied.

## VI.    **Recommendation.**

Based on the foregoing, **IT IS RECOMMENDED** that:

(1) Powell's request for judgment in his favor based on defendants' failure to attach a certificate of non-concurrence to their motion to dismiss be **DENIED**;

(2)  Defendant Wetzel be dismissed from this action;

(3)  Defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part:

    (a) The defendants' dismissal motion should be **GRANTED** with respect to Counts II (Failure to Train) and III (Denial of Due Process);

    (b) Defendant Fisher's dismissal motion should be **GRANTED** with respect to Count I (Denial of Right of Access to Courts);

    (c) Defendant Workinger's dismissal motion should be **DENIED** with respect to Count I (Denial of Access to Courts); and

    (d) Department of Corrections' dismissal motion should be **DENIED** with respect to Counts IV (ADA) and V (RA).

(4) The case should be remanded to the undersigned for further pre-trial proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **25th** day of **February, 2014**.

**S/Susan E. Schwab**
Susan E. Schwab
United States Magistrate Judge