UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN POWELL, | : | CIVIL NO: 1:12-CV-01684 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| JON FISHER, *et al.,* | : | |
| | : | |
| Defendant | : | |
| | : | |

## REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Kevin Powell, claims that while he was a prisoner at the State Correctional Institution at Smithfield, the defendants violated his right of access to the courts by confiscating his legal property and his statutory rights under the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973 ("RA") by failing to accommodate his mental disability resulting in the denial of access to certain prison services and programming and resulting in his disciplinary confinement.  Presently before the Court is the defendants' partial motion for summary judgment based on Powell's purported failure to exhaust administrative remedies.  For the following reasons, we recommend that the motion be denied.

## II.  Background and Procedural History.

Powell began this action in August of 2012 by filing a complaint.  At that time, Powell was proceeding *pro se*.  Following the decision of the United States Court of Appeals for the Third Circuit in *Powell v. Symons,* 680 F.3d 301 (3d Cir. 2012), we appointed counsel to represent Powell in this case.  In *Powell v. Symons*, 4:07-CV-2225 (M.D.Pa.), another, earlier *pro se* case filed by Powell, the Third Circuit, in light of the fact that Powell had been determined to be incompetent in criminal proceedings,[1] vacated a decision granting summary judgment in favor of the defendant in that case and remanded the case for the appointment of counsel or a guardian. *See Powell v. Symons,* 680 F.3d at 308-309.  We then attempted to find counsel to represent Powell in this case as well.  Although that effort initially proved unsuccessful, on February 21, 2013, counsel entered an appearance on behalf of Powell in this case.

Powell, through counsel, then filed an amended complaint naming the following defendants: (1) Superintendent Jon Fisher; (2) Sergeant Workinger; (3) Secretary Wetzel; and (4) the Pennsylvania Department of Corrections (DOC).

---

[1] Powell was charged criminally with issuing threats against the President of the United States and mailing threatening communications in violation of 18 U.S.C. § 871 and 876(c).  *Powell v. Symons,* 680 F.3d 301, 304 (3d Cir. 2012).  In 2009, the criminal court found that Powell was "suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and the consequences of the proceedings now against him," and in 2010, the United States Attorney dismissed the criminal charges against him. *Id.* at 305.

The amended complaint contains the following claims: denial of right of access to the courts against Fisher and Workinger (Count 1); Failure to Train and Supervise against Fisher (Count 2); violation of Fourteenth Amendment due process rights against Workinger and Fisher (Count 3); violation of statutory rights under the ADA against the DOC (Count 4); and violation of statutory rights under the RA against the DOC (Count 5). *Doc. 47* at ¶¶ 122-132.  The Court subsequently dismissed defendant Wetzel from the case and dismissed Counts 2 and 3 of the amended complaint.

After the remaining defendants (Fisher, Workinger, and the DOC) filed an answer to the amended complaint, the Court held a case management conference at which the parties requested a stay of proceedings on the merits until such time as the issue of exhaustion of administrative remedies is resolved.  In a case management order, we granted that request, entered case management dates regarding discovery and disposition motions on the issue of exhaustion, and deferred entering case management dates and deadlines regarding discovery and dispositive motions on the merits as well as trial and pretrial deadlines until a later time, if necessary, after the exhaustion issue is addressed.  In that regard, we set a December 15, 2014 discovery deadline regarding exhaustion and a deadline of January 15, 2015 for dispositive motions (either a motion for summary judgment, or, if there are disputed issues of fact, a motion for an evidentiary hearing)

regarding exhaustion.  We specifically stated that we intended to decide the issue of exhaustion prior to any proceedings on the merits.  Thus, we stated, if neither a motion for summary judgment nor a motion for an evidentiary hearing on the issue of exhaustion is filed on or before the deadline, the Court will deem the defendants to have waived the affirmative defense of lack of exhaustion of administrative remedies.  We further stated that if a motion for summary judgment is filed by the defendants regarding exhaustion and the Court denies that motion, the defendants may not raise the exhaustion issue at a later time.

After requesting and receiving an extension of time, on January 22, 2015, the defendants filed a partial motion for summary judgment as to exhaustion of administrative remedies.  That motion has been fully briefed and is ripe for decision.

## III.  Summary Judgment Standards.

The defendants moved for partial summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which

a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v.*

*U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa.

2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of

the basis for its motion and identifying those portions of the record that

demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the

nonmoving party may not rest upon the mere allegations or denials of its pleading;

rather, the nonmoving party must show a genuine dispute by "citing to particular

parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made

for purposes of the motion only), admissions, interrogatory answers, or other

materials" or "showing that the materials cited do not establish the absence . . . of a

genuine dispute." Fed.R.Civ.P. 56(c).  The substantive law identifies which facts

are material, and "[o]nly disputes over facts that might affect the outcome of the

suit under the governing law will properly preclude the entry of summary

judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

about a material fact is genuine only if there is a sufficient evidentiary basis that

would allow a reasonable fact finder to return a verdict for the non-moving party.

*Id.* at 248-49.  When "faced with a summary judgment motion, the court must view

the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

A party that moves for summary judgment on an issue for which he or she bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011).  "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted).  A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id.*  "Specious objections will not, of

course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

## IV.  Discussion.

The defendants contend that they are entitled to summary judgment as to Powell's access-to-the-courts claim based on the September 2010 confiscation of his property and his ADA and RA claims because Powell failed to exhaust available administrative remedies.[2]  The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions in court.  The Act provides:

> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. §1997e(a).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).  "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.*  Thus, the benefits of the

---

[2]  The defendants concede that Powell exhausted administrative remedies regarding the December 2010 confiscation of his property.  Thus, they have not moved for summary judgment as to that claim.

exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.  While the exhaustion requirement serves to alert prison officials to a problem, "notice to those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.*

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000).  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007).  As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006).  In other words, it requires more than simple exhaustion, *i.e.*, more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004).  Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id. at 231*.  The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Inmates are only required to exhaust administrative remedies that are available, meaning "'capable of use; at hand.'" *Small v. Camden Cty,* 728 F.3d 265, 271 (3d Cir. 2013)(quoting *Brown v. Croak*, 312 F.3d 109, 113 (3d Cir. 2002)).  "Remedies that are not reasonably communicated to inmate may be considered unavailable for exhaustion purposes." *Id.*  Further, an "administrative remedy may be found to be unavailable where a prisoner is prevented by prison authorities from pursuing the prison grievance process." *Stewart v. Kelchner*, 358 F. App'x 291, 295 (3d Cir. 2009).

The defendants contend that Powell failed to exhaust administrative remedies as to his access-to-the-courts claim based on the September 2010 confiscation of his property and as to his ADA and RA claims. We first address the access-to-the-courts claim based on the September 2010 confiscation, and then we address the ADA and RA claims.

### A. Access-to-the-Courts Claim based on the September 2010 Confiscation of Property.

As to the claim based on the September 2010 confiscation of property, the defendants assert that Powell defaulted this claim even though he filed two grievances regarding that confiscation.

The DOC has implemented an official Inmate Grievance System, which is governed by Administrative Directive 804 (DC-ADM 804), which sets forth a three-tier administrative remedy system. Under DC-ADM 804, a prisoner is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. The prisoner may appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. From there the prisoner may appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).[3]

---

[3] Although DC-ADM 804 was amended during the relevant time period in this case, these basic steps remained the same. *See Doc. 118-3, Exhibits A-C of Declaration of Melissa Roberts.*

According to the defendants, the first grievance that Powell filed regarding the September 2010 confiscation was given grievance number No. 341635. Powell filed that grievance on or about October 29, 2010. *See Doc. 118-2* at 13. The grievance officer denied that grievance on the basis that the property confiscated exceeded the amount allowed by the DOC:

> In your grievance you claim that various staff members are systemically retaliating against you because you have filed grievances. You ask that four property boxes of material be returned to you. You threaten law suits as well. It should be noted that you were informed on 9-23-10 via memo that you have exceeded your maximum amount of property. It was explained to you what your choices were and what actions you needed to take. On 10-29-10 another memo was sent to you due to your failure to follow the direction in the first memo. You do not have the funds to send your excess property home and staff had given you the opportunity to have a family member pick up the property, however this did not transpire. Your remedy remains to have the property returned to you and this will not happen. You are to abide by policy the same as every inmate is. You have excessive property and have not provided a means to dispose of it therefore per policy it will be destroyed. You will receive no monetary compensation as requested and this grievance is denied.

*Doc. 118-2* at 12. Powell filed an appeal of that denial, and on November 18, 2010, defendant Fisher denied that appeal. *Doc. 118-2* at 8-10. According to the defendants, although Powell directed correspondence to SOIGA regarding the issues raised in the grievance sometime the following year, Powell did not submit an appeal to SOIGA.

According to the defendants, the second grievance that Powell filed regarding the September 2010 confiscation was given grievance number 341637. Powell filed that grievance on or about November 3, 2010. *See Doc. 118-2* at 17. On November 5, 2010, the facility grievance coordinator rejected that grievance on the basis that the issues presented will be addressed in connection with Grievance 341635. *Id.* at 16.  Powell appealed that rejection to Superintendent Fisher, who, on November 15, 2010, denied the appeal. *Id.* at 14-15.  According to the defendants, Powell did not appeal that rejection any further.

Powell contends that the defendants failed to carry their burden of establishing that he failed to exhaust available administrative remedies.  In this regard, he contends that although the defendants submitted declarations from Melissa Roberts, the Assistant Chief of Accreditation in the DOC's Office of Standards, Practices & Sentence Computation, Lisa Hollibaugh, the Grievance Coordinator at SCI-Smithfield, and Dorina Varner, the Chief Grievance Officer for the DOC, those declarations are insufficient to support summary judgment.  Before discussing Powell's specific arguments regarding those declarations, we will summarize the declarations.

### 1. The Defendants' Declarations.

The defendants submitted a declaration from Melissa Roberts, the Assistant Chief of Accreditation in the Office of Standards, Practices & Sentence Computation for the DOC. *Doc. 118-3.* This particular declaration[4] of Roberts is submitted under penalty of perjury and asserts that the statements in the declaration are based upon Roberts's "personal knowledge and belief." *Id.* at 1. Roberts states that she is the custodian of the DOC's policies and procedures manuals, and she sets for the dates that the various versions of the DC-ADM 804 policy and procedural manuals were in effect. *Id.* at 1-2, ¶¶4-9. She further attaches those documents to her declaration and verifies that they are true and correct copies. *Id.* at 1, ¶3.

The defendants also submitted a declaration from Lisa Hollibaugh, the Grievance Coordinator at SCI-Smithfield, regarding the grievances that Powell filed between April 1, 2010 and February 28, 2011. *Doc. 118-2.* Hollibaugh's declaration is submitted under penalty of perjury and asserts that the statements in the declaration are based upon her "personal knowledge and belief." *Id.* at 1. Hollibaugh states that as the Grievance Coordinator, she is responsible for the overall administration of the grievance system at SCI-Smithfield, including determining whether a grievance was filed in compliance with policy. *Id.* at 1, ¶3.

---

[4] Roberts submitted a second declaration, *see doc. 118-5*, which we discuss later in connection with our discussion of Powell's ADA and RA claims.

13

She also states that she is the custodian of all inmate grievance records filed by inmates at SCI-Smithfield, and as such she is responsible for data collection, tracking, and statistical reporting of the grievances filed by inmates at SCI-Smithfield. *Id.* at 1-2, ¶3.  She further states that "[i]nformation regarding the grievances filed by a particular inmate is recorded in the Department's Automated Inmate Grievance Tracking System." *Id.* at 2, ¶4.  Hollibaugh states that she was requested to review the grievance records to determine whether Powell filed any grievances, specifically grievances relating to property issues, between April 1, 2010 and February 28, 2011. *Id.* at 2, ¶6.  According to Hollibaugh, during that time period, Powell filed 20 grievances, and she provides the grievance numbers for those twenty grievances and attaches documents relating to those grievances to her declaration. *Id.* at 2, ¶¶7-8.  She states that "[n]o other grievances were filed during the relevant time period." *Id.* at 2, ¶9.

The defendants further submitted a declaration from Dorina Varner, the Chief Grievance Officer for the DOC, regarding grievance appeals Powell submitted for final review. *Doc. 118-1.*  Varner's declaration is submitted under penalty of perjury and asserts that the statements in the declaration are based upon her "personal knowledge and belief." *Id.* at 1.  Varner states that she is employed as the Chief Grievance Review Officer for SOIGA, which handles final appeal review of grievances filed by inmates under DC-ADM 804. *Id.* at 1-2, ¶¶2-3.  She

states that she is responsible for maintaining records of the appeals filed with SOIGA by inmates in the various state correctional institutions, including SCI-Smithfield. *Id.* at 1, ¶2.  She further states that "[i]nformation regarding the grievances filed by a particular inmate is recorded in the Department's Automated Inmate Grievance Tracking System," and that the system indicates whether an inmate has fully exhausted a particular grievance through SOIGA. *Id.* at 2, ¶4. After setting forth a brief summary of the steps of the grievance process under DC-ADM 804, Varner states that defense counsel requested that she review the Automated Inmate Greivance Tracking System and grievance records maintained by SOIGA to determine whether Powell appealed any grievances to final review between April 1, 2010 and February 28, 2011. *Id.* at 3, ¶12.  According to Varner, during that time period, Powell filed 20 grievances and appealed 7 of those to final review. *Id.* at 3, ¶¶13-14.   In addition to providing the grievance numbers for the 20 grievances, she provides the grievance numbers for the 7 appealed to final review and attaches documents relating to those grievances to her declaration. *Id.* She states that "[n]o other grievances were appealed to final review during the relevant time period." *Id.* at 4, ¶15.

Fed.R.Civ.P. 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

affiant or declarant is competent to testify on the matters stated." Asserting that a record review does not yield personal knowledge about events in the records unless the declarant shows that he or she had personal knowledge of how the records were created, archived, and retrieved, Powell attacks the declarations of Hollibaugh and Varner as not based on personal knowledge.[5]

In this regard, although Hollibaugh states that "[i]nformation regarding the grievances filed by a particular inmate is recorded in the Department's Automated Inmate Grievance Tracking System," *doc. 118-2* at 2, ¶4, Powell, characterizing this statement as a vague generalization, asserts that the statement cannot be construed as evidence that *all* grievance information for *every* prisoner is recorded in the system or that the data is reliably stored in the system and retrievable. Powells asserts that "Hollibaugh's 'personal knowledge' does not extend that far." *Doc. 125* at 8. He also asserts that Hollibaugh cannot have personal knowledge to support her statement that he filed no other grievances other than those attached to her declaration. Further, Powell attacks Hollibaugh's declaration on the basis that although she states that she was requested to review the grievances records, she does not state that she actually reviewed the records and she does not state how she

---

[5] Powell does not contend that Roberts's declaration regarding DC-ADM 804 is not based on personal knowledge. Rather, he asserts that such declaration, which verifies the dates when versions of DC-ADM 804 went into effect and attaches those versions, does not attest that the administrative remedies under DC-ADM 804 were actually available to him.

conducted any such review.  Powell similarly attacks Varner's declaration on the

basis that Varner asserts that she was asked to review records, but she does not

state what records she reviewed, how she reviewed them, or even that she reviewed

any records at all.  Further, Powell criticizes both Hollibaugh and Varner's

declarations for purportedly failing to explain what the Department's Automated

Inmate Tracking System is or, assuming that they use it to store and retrieve

grievance, how they use it for such.

In addition to asserting that the declarations submitted by the defendants are

insufficient to support summary judgment, Powell asserts that based on his own

declaration there are genuine disputes about material facts surrounding the

exhaustion issue.  He contends that he exhausted available administrative

remedies.  He further asserts that remedies were not available to him because he

was deprived of assistance he needed in order to avail himself of the remedies and

because the defendants seized his papers.  If Powell's declaration creates a genuine

factual dispute regarding a material fact, that precludes summary judgment even

assuming that the declarations submitted by the defendants would be sufficient,

absent contrary evidence, to support summary judgment.  In other words, if

Powell's declaration creates a genuine factual dispute, we need address his

arguments regarding the purported deficiencies in the defendants' declarations.

## 2. Powell's Competency to Testify.

Before we address whether Powell's declaration creates a genuine dispute regarding a material fact, we address the defendants' contention that Powell is not competent to testify as to matters of fact, and therefore, the Court should not consider his declaration.  In support of that contention, the defendants cite the Third Circuit's decision in *Powell v. Symons,* 680 F.3d 301 (3d Cir. 2012).  As mentioned earlier, in that case, the United States Court of Appeals for the Third Circuit vacated a decision granting summary judgment in favor of the defendant in that case and remanded the case for the appointment of counsel or a guardian for Powell. *Id.* at 308-309.  That decision was based on Fed.R.Civ.P. 17(c)(2), which provides, in part, that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."  Powell was charged criminally with issuing threats against the President of the United States and mailing threatening communications in violation of 18 U.S.C. § 871 and 876(c). *Powell,* 680 F.3d at 304.  The issue of Powell's competency was raised in the criminal case, and the District Court appointed Dr. Stefan Kruszewski to examine Powell and prepare a report. *Id.*  The Third Circuit summarized Dr. Kruszewski's conclusions and the District Court's determination regarding Powell's competency as follows:

> Dr. Kruszewski, a graduate of Harvard Medical School, has written and spoken extensively about psychiatric issues.  He

has had at least 30 years of clinical practice experience in which he treated several thousand patients with a wide variety of psychiatric and neuropsychiatric conditions. He prepared an extensive report for the criminal case, setting forth details of his examination. Dr. Kruszewski concluded that Powell met the accepted diagnosis of delusional disorder, mixed subtypes, a diagnosis based on Powell's "repeated pattern of physical complaints without medical findings to support them, the somatic elements of his reported 'torture' and his simultaneously persistent and episodic refusal of medication." The report continued, "[r]egardless of the cause of his symptoms and the origins of his delusional disorder, some of his conduct is beyond his willful control. That is the nature of an isolated psychotic system of relatively fixed delusional beliefs."

Dr. Kruszewski wrote that Powell's "potential to act out violently against others, including those he named in his letters, is small," in part because he has "somewhat limited cognitive abilities." Dr. Kruszewski further noted that "there is a great deal of doubt that he had the capacity to form the criminal intent to harm because he has a persistent serious mental illness that chronically alters his reality and his ability to conduct himself within the confines of the law," and that "we can expect his delusional symptoms to wax and wane." Notwithstanding this diagnosis, Dr. Kruszewski also found that "[a]lthough his testable fund of information was limited in certain ways . . . , Mr. Powell was able to satisfy my concern that he was able to understand the legal processes and cooperate with them to the best of his ability."

After reading and absorbing Dr. Kruszewski's diagnosis, the District Court acknowledged that Powell "may be suffering from a mental disease or defect that has rendered him mentally incompetent to the extent that he was previously unable to enter a knowing and voluntary guilty plea." However, the Court determined that Dr. Kruszewski's report did not provide the Court with sufficient information regarding Powell's competency when he pleaded guilty and ordered that Powell be committed to federal custody for further psychiatric evaluation.

In October 2009, on the basis of an additional psychiatric evaluation, the Court granted the motion of Powell's defense

counsel to withdraw his guilty plea and enter a plea of not
guilty to the charges in the indictment.  The Court then issued
an order finding that Powell "is presently suffering from a
mental disease or defect rendering him mentally incompetent to
understand the nature and the consequences of the proceedings
now against him."  Subsequently, the U.S. Attorney requested
dismissal of the indictment, which the Court granted in July
2010.

*Id.* at 304-305 (citations omitted).  Given that Powell had been adjudicated

incompetent in the criminal case and the district court was aware of that

adjudication, the Third Circuit concluded that the district court abused its

discretion by not appointing an appropriate representative for Powell in accordance

with Fed.R.Civ.P. 17(c)(2).  In that regard, the Third Circuit cited Fed.R.Civ.P.

17(b)(1), which provides that an individual's capacity to sue is determined by the

law of his or her domicile, and citing *Syno v. Syno*, 594 A.2d 307 (1991), stated

that under the law of Pennsylvania, which is Powell's domicile, "once a person is

adjudicated incompetent, s/he is deemed incompetent 'for all purposes until, by

court order, the status of incompetency is lifted.'" *Id.* at 308.  The Third Circuit

remanded the case with directions for the district court to appoint a representative

or counsel for Powell. *Id.* at 308-309.

In support of their contention that Powell is not competent to provide a

declaration, the defendants also cite: (1) a December 5, 2014 email from Powell's

counsel in which in response to a request for dates for Powell's deposition, she

states, among other things, that Powell "is not competent to testify as to matters of

fact;" (2) other emails from Powell's counsel asserting that Powell is having a bad time with his mental illness; (3) Powell's supplemental answers to defendants' interrogatories in which Powell's counsel requests that the defendants accept her affirmation in lieu of an affirmation from Powell given that he is "temporarily indisposed and unavailable because of his illness and disability;" and (4) a declaration filed in this case on August 5, 2013 by Powell's counsel in which she states among other things that Powell does not grasp facts conveyed in writing, that he only has a grade school education and cannot read, that he is intellectually challenged with an IQ of 70, that he does not have insight into his mental illness, and that he is not capable of asking for an accommodation for his mental and emotional disabilities. *Doc. 126-1* at 5 and *Doc. 126-3*, *Doc. 126-4*, and *Doc. 68* at ¶¶34 and 38-40.[6]

Competence to testify is determined by F.R.E. 601, which generally provides that "[e]very person is competent to be a witness unless these rules provide otherwise." There is no provision in the Federal Rules of Evidence

---

[6] The declaration of counsel was submitted in opposition to a motion to dismiss. In light of the standard applicable to a motion to dismiss, the Court did not consider the declaration in connection with the decision on the motion to dismiss.

regarding mental competency to testify, and Rule 601 does not specify a mental

qualification for testifying:

> No mental or moral qualifications for testifying as a
> witness are specified.  Standards of mental capacity have
> proved elusive in actual application.  A leading commentator
> observes that few witnesses are disqualified on that ground.
> Discretion is regularly exercised in favor of allowing the
> testimony.  A witness wholly without capacity is difficult to
> imagine.  The question is one particularly suited to the jury as
> one of weight and credibility, subject to judicial authority to
> review the sufficiency of the evidence.

Advisory Committee Notes to F.R.E. 601 (citations omitted).  Thus, under F.R.E.

601, Powell is not necessarily precluded from providing testimony, including a

declaration, even though he was adjudicated incompetent in criminal proceedings.

F.R.E 601 further provides that "in a civil case, state law govern the

witness's competency regarding a claim or defense for which state law supplies the

rule of decision."  That provision does not apply here because the claims in this

case are federal claims and the defense of failure to exhaust is a federal defense.

Moreover, even if state law applied, under Pennsylvania law, a person adjudicated

incompetent may nevertheless be competent to testify.  In *Syno v. Syno*, 594 A.2d

307, 313 (Pa. Super. Ct. 1991), the same decision cited by the Third Circuit in

*Powell v. Symons,* the Pennsylvania Superior Court stated that "where an

adjudicated incompetent is a witness, the court must conduct an inquiry to

determine whether the incompetent understands his or her duty to tell the truth and

whether he or she is able to perceive, remember and communicate the pertinent

facts." *Id.* "If the court so finds, then the incompetent is 'competent' to testify." *Id.*

In sum, even though Powell was adjudicated incompetent in connection with

criminal proceedings and even though his counsel has at times states that he cannot

testify,[7] given the presumption in favor or competency set forth in F.R.E. 601, we

cannot say as a matter of law that Powell is incompetent to provide his declaration.

We note that in his declaration, Powell specifically states that he received

assistance from his attorney to read and sign the declaration and that his attorney

wrote down what he had told her over the last two years and that he has checked it

over and it is correct. *See Doc. 124-2.* How Powell's mental illness and

intelligence affect his ability to testify will have to be made by a factfinder after

hearing Powell's testimony. That determination cannot be made on summary

judgment. Thus, we presume that Powell is competent to provide testimony, and

we will consider his declaration.

---

[7] The defendants do not argue that Powell is judicially estopped from providing
testimony given his counsel's statements. Moreover, it is not clear that some of the
statements made by counsel, such as those made in emails, are admissible.
Further, some of counsel's statements, as well as Dr. Kruszewski's report, suggest
that the symptoms of Powell's mental illness wax and wane. Thus, there may be
times when he is able to testify and times when he is not able to testify. On
summary judgment, we cannot, however, conclude as a matter of law that Powell
was not competent to testify at the time he signed his declaration.

### 3. Powell's Declaration.

Powell states in his declaration, among other things, that after defendant Workinger confiscated four boxes of his property in September of 2010, he tried to get his missing property back and he "filed requests, complaints, and grievances," and he "appealed the grievance as far as [he] could." *Doc. 124-2* at ¶26. Powell also states that in December of 2010, defendant Workinger came to his cell in the Restricted Housing Unit and confiscated all of his "papers, letters, copies, and notes" that he had in the cell including copies of his "requests to staff and grievances and appeals" from when defendant Workinger confiscated his property three months earlier. *Id.* at ¶27. According to Powell, he never saw those papers again. *Id.* Powell states that right after the December 2010 confiscation of his property, he was transferred from SCI-Smithfield to SCI-Fayette and a lot of his property never arrived at SCI-Fayette. *Id.* at ¶29. While Powell admits that his attorney received some of his property in June of 2014, he states that it was much less than what had been confiscated from him. *Id.* at ¶41.

### 4. Summary Judgment Should Not Be Granted as to the September 2010 Confiscation of Property.

Powell suggests that by confiscating his property, including grievances and grievance appeals, in December of 2010, the defendant prevented him from appealing the denial of his grievance regarding the September 2010 confiscation to

final review.  The defendants, on the other hand, contend that the December 2010

confiscation "obviously occurred long after Plaintiff would have been required to

file his grievances, appeals or other requests on the September confiscation." *Doc.*

*126* at 10 n.3.  Although Powell did not submit Grievance 341635 until on or about

October 29, 2010, the grievance officer addressed the grievance on the merits

rather than rejecting it as untimely.  Thus, the DOC waived any initial untimeliness

of the grievance.  Powell filed an appeal of the denial of the grievance, which

defendant Fisher denied on November 18, 2010, again on the merits, not on the

basis of timeliness.

Under DC-ADM 804, Powell had 15 working days from November 18,

2010, the date of Fisher's denial of his appeal of Grievance 341635, to submit an

appeal to final review to SOIGA. *Doc. 118-3* at 12 & 42.  DC-ADM 804 defines

working days as "Monday through Friday, excluding state holidays." *Id.* at 6 & 56.

Thus, excluding weekends and the Thanksgiving holiday, Powell had until

December 10, 2010 to submit an appeal to SOIGA.  On December 6, 2010,

however, Powell asserts that the defendants confiscated his legal paperwork, and

the next day they transferred him to SCI-Fayette without his paperwork.  He

asserts that he never got those confiscated papers back.  And, thus, he could not

submit a final appeal to SOIGA because DC-ADM 804 provides that "[a] proper

appeal to Final Review must include photocopies of the Initial Grievance, Initial

Review Response/Rejection, the Inmate Appeal to the Facility Manager, and the Facility Manager/designee's decision and a written appeal to the SOIGA. Failure to provide the proper documentation may result in the appeal being dismissed." *Doc. 118-3* at 43.[8]

Given the confiscation of Powell's property during the time that he had to submit an appeal to final review and Powell's statement in his declaration that he appealed grievances as far as he could, we cannot say as a matter of law that the administrative remedies under DC-ADM 804 were available to Powell to grieve to final review the September 2010 confiscation of his property. Thus, the defendants are not entitled to summary judgment on the basis of failure to exhaust on that claim.[9]

_____

[8] DC-ADM 804 was amended effective December 8, 2010. The above quoted language is from the version in effect beginning December 8, 2010. With only minor differences in language, the version in effect prior to December 8, 2010, contained the same requirement. *See Doc. 118-3* at 13.

[9] Given our determination that based on Powell's declaration, there is a genuine factual dispute about whether administrative remedies were available to Powell regarding the September 2010 confiscation, we need not address Powell's arguments regarding the purported deficiencies in the defendants' declarations. Nor do we need to address Powell's other arguments for why DC-ADM 804 was not available regarding the September 2010 confiscation.

### B. ADA and RA Claims.

The defendants contend that Powell procedurally defaulted his ADA and RA claims because he did not submit any requests for an accommodation under DC-ADM 006, the DOC's policy regarding reasonable accommodations for inmates with disabilities, or any grievances about a need for an accommodation or assistance.  The defendants also assert that although Powell was questioned about any disabilities and his mental health status several times between 2009 and 2011 during institution transfers, he denied any mental or physical disabilities or limitations suggestive of a need for an accommodation.  The defendants submitted two declarations in support of those contentions—one from Melissa Roberts attaching a version of DC-ADM 006 that was purportedly in effect from January 23, 2009 through November 24, 2014, and one from William Dreibelibis, the Corrections Health Care Administrator (CHCA) at SCI-Smithfield.  Powell attacks these declarations on various grounds and contends that they are not sufficient to satisfy the defendants' burden of showing that he failed to exhaust administrative remedies.

### 1. The Defendants' Declarations.

As to Melissa Roberts's declaration, Powell asserts that it is not based on personal knowledge as required by Fed.R.Civ.P. 56(c)(4) and citing 28 U.S.C.

§ 1746 he assets that it does not present admissible evidence. *See Doc. 125* at 7 and *Doc*. 124 at ¶29.  This declaration by Roberts is not made under penalty of perjury, as required by 28 U.S.C. § 1746.  Therefore, we do not consider it.

We summarize here William Driebelbis's declaration, which **is** made under penalty of perjury. *Doc. 118-4*.  Driebelbis states that he is responsible for planning, organizing, directing, and managing the provision of the health care services program at SCI-Smithfield, including mental health treatment. *Id.* at ¶2. He also asserts that part of his duties including reviewing requests by inmates for disability accommodations under DC-ADM 006. *Id.* at ¶4.  Driebelbis states that under DC-ADM 006, inmates who are seeking an accommodation based on their disability are to submit a request to the CHCA at their institution, and after the CHCA reviews that request and any relevant information, the CHCA makes a recommendation to the Superintendent regarding the need for an accommodation. *Id.* at ¶5.  After reviewing the request of the CHCA, the Superintendent submits a recommendation packet to the Central Office Inmate Disability Accommodation Committee (COIDAC), which in turn reviews that recommendation packet and upholds[10] the recommendation, reverses it, or remands it back to the institution for further information. *Id.* at ¶¶5-6.  If an inmate is dissatisified with the final

---

[10]  Although Driebelbis actually uses the word "withholds" here, that does not make sense and it appears that he meant the word "upholds."

response to his requests, he must further grieve the matter through the grievance process under DC-ADM 804. *Id.* at ¶6.

Driebelbis states that inmates are screened for disabilities upon their initial reception into DOC custody and upon intra-system transfers. *Id.* at ¶7.  He also states that staff instruct any inmate who claims a disability as to the procedures for requesting an accommodation, if one has not been provided, and staff may refer any inmate who is found to be disabled for an accommodation under DC-ADM 006. *Id.* at ¶¶7-8.  According to Driebelbis, Powell did not submit any request for accommodation under DC-ADM 006, he responded negatively to questions regarding mental health concerns, and his mental health records indicated no need for further care or follow-up. *Id.* at ¶¶9-10.  Driebelbis attached to his declaration copies of intra-system transfer screenings for Powell from October 22, 21009 through November 1, 2011. *Id.* at ¶10.

As he did with the declarations of Hollibaugh and Varner, Powell attacks Driebelbis's declaration as, in part, not based on personal knowledge.  More specifically, he contends that because Driebelbis does not have personal knowledge for his statements that (1)  all inmates are screened upon their initial reception into the DOC and upon intra-system transfers; (2) any inmate who claims a disability is instructed by staff regarding the procedures for requesting an

accommodation; (3) Powell responded negatively to questions regarding his mental health concerns; and (4) Powell did not submit any requests for accommodations.[11]

Again, in addition to asserting that the declarations submitted by the defendants are insufficient to support summary judgment, Powell asserts that based on his own declaration there are genuine disputes about material facts surrounding the exhaustion issue.  He asserts that remedies were not available to him because he was deprived of assistance he needed in order to avail himself of the remedies and because the defendants seized his papers.  As before, if Powell's declaration creates a genuine factual dispute regarding a material fact, that precludes summary judgment even assuming that the declarations submitted by the defendants would be sufficient, absent contrary evidence, to support summary judgment.  In other words, if Powell's declaration creates a genuine factual dispute we need address Powell's arguments regarding the purported deficiencies in the defendants' declarations.

### 2. Powell's Declaration and Evidence.

In his declaration, Powell states that he cannot read well or write very well; that he suffered the loss of his property on at least three different occasions; that he

---

[11] Driebelbis also states in his declaration that when staff questioned Powell about whether he had any physical disability or limitations, he denied such, and Powell asserts that Driebelbis does not have personal knowledge regarding that assertion. Physical limitations and disabilities, however, are not at issue here.

asked prison officers for help to use the grievance system and to deal with the

misconduct policy and appeals of misconducts, but they did not help; that he could

not understand or challenge misconduct charges and administrative decisions that

caused him to be placed in the Restricted Housing Unit, that he tried to appeal the

misconduct charges and asked for help, but he did not receive help; that on several

occasions, other inmates helped him with grievances or misconduct appeals, but

when staff found that out, they moved the other prisoner or assigned him to a

different time slot for the law library; that he kept records of the requests he made

for assistance with his misconduct appeals and grievances, but those records were

among the papers confiscated from him; and that when he was in the restricted

housing unit, it was difficult or impossible for him to use the prison law library to

work on his court cases and he could not participate in activities that the prison

made available to other prisoners. *Doc. 124-4* at ¶¶ 2, 4,12, 14, 44, 46, 48, 49 & 50.

In addition to his declaration, Powell submits several pages from a

deposition of Dr. John Symons taken in the *Powell v. Symons* case, where Dr.

Symons testified that a psychological evaluation of Powell listed Powell's IQ as 70

and his reading ability as at a third-grade level, but that based on his memory of

Powell, Dr. Symons was surprised that Powell's IQ was that low. *Doc. 124-3* at 3-

4.

### 3. Summary Judgment Should Not Be Granted as to the ADA and RA Claims.

Given Powell's assertions that he asked for help in filing misconducts and grievances appeals, that those requests were denied, that his copies of those requests were confiscated as well as his assertions regarding his inability to understand the misconduct process, the evidence of his low IQ, the fact that Powell was in the past found to be incompetent based on his mental illness, and the lack of evidence in the record that DC-ADM 006 was ever explained to Powell or even distributed to the inmate population in general, we cannot say as a matter of law that Powell failed to exhaust available administrative remedies as to his ADA and RA claims. Accordingly, the defendants are not entitled to summary judgment as to those claims.

### C.  No Further Proceedings Regarding Exhaustion Are Warranted.

Although the defendants are not entitled to summary judgment, "[u]nder the PLRA, exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013). It is a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original)(quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)). There is no right to have a jury decide the issue of exhaustion. *Id.* at 271. Rather, "exhaustion is a question of law to be

determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269.  The issue can be decided after an evidentiary hearing.

In this case, the defendants have not requested a hearing.  Further, as set forth above, we stayed proceedings on the merits until such time as the issue of exhaustion of administrative remedies is resolved, and we set case management dates regarding discovery and disposition motions on the issue of exhaustion.  We specifically stated that we intend to decide the issue of exhaustion prior to any proceedings on the merits.  Thus, we stated, if neither a motion for summary judgment nor a motion for an evidentiary hearing on the issue of exhaustion is filed on or before the deadline, the Court will deem the defendants to have waived the affirmative defense of lack of exhaustion of administrative remedies.  We further stated that if a motion for summary judgment is filed by the defendants regarding exhaustion and the Court denies that motion, the defendants may not raise the exhaustion issue at a later time.  Given the defendants' failure to request a hearing by the deadline set in the case management order, we conclude that the defendants' should be precluded from further raising the issue of failure to exhaust administrative remedies.

## V.  Recommendations.

Accordingly, for the foregoing reasons, it is recommended that the

defendants' partial motion (doc. 117) for summary judgment be denied and that the

case be remanded to the undersigned for further proceedings on the merits.


The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of August, 2015.


_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge